# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| FERNAN MARTINEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 6:18-03332-CV-RK |
| | ) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

### ORDER REVERSING THE ALJ'S DECISION AND REMANDING THE CASE

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **REVERSED**, and the case is **REMANDED**.

### Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the

findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical spine status post fusion; left cervical dystonia and torticollis; depression; generalized anxiety disorder; obsessive compulsive disorder; and personality disorder." However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work[1] with the following limitations:

> the claimant can occasionally push or pull levers with the upper left extremity; no climbing ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, crouch, kneel, and crawl; can occasionally reach at shoulder level and above in all directions with the left upper extremity; can occasionally reach overhead with the bilateral upper extremities; should avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, unprotected heights, and the use of hazardous machinery which does not include a motor vehicle; can make simple, work-related decisions; can maintain concentration, persistence, and pace for two hours at a time for simple tasks; can understand, carry out, and remember simple work instructions and procedures; can adapt to changes in the work setting that are simple, predictable, and can be easily explained; where there is occasional and superficial interaction with co-workers, supervisors, and the general public.

(Tr. 16-17.) The ALJ then found that, considering Plaintiff's age, education, work experience, and RFC, he can perform jobs that exist in significant numbers in the national economy, such as the jobs of final assembler and patcher. Consequently, the ALJ concluded that Plaintiff was not disabled.

On appeal, Plaintiff argues that the RFC is not supported by substantial evidence. Specifically, he argues that the ALJ (1) improperly discounted the opinion of Plaintiff's treating physician; (2) improperly discounted Plaintiff's subjective reports about his symptoms; and

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

2

(3) failed to support the RFC with medical evidence. The Court agrees that the ALJ improperly discounted the opinion of Plaintiff's treating psychiatrist (Maria Mendez, M.D.) and will remand the case for reconsideration of Dr. Mendez's opinion and Plaintiff's subjective complaints about his mental condition. However, the Court affirms the ALJ's decision regarding Plaintiff's subjective complaints about his neck injury and rejects Plaintiff's suggestion that an RFC cannot be supported by a non-examining physician's opinion.

I. **Treating Physician's Opinion**

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (cleaned up). "A treating physician's opinion does not automatically control, since the record must be evaluated as a whole." *Id.* (cleaned up). However, an ALJ must "give good reasons" to discount a treating physician's opinion. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).

Here, the ALJ failed to give good reasons to disregard Dr. Mendez's opinion. Dr. Mendez was of the opinion that Plaintiff would likely miss four or more workdays a month; that he would likely be off task at least 25% of the time; and that he had moderate, marked, and severe limitations in various areas of mental functioning due to his mental conditions (major depression with psychotic features, obsessive compulsive personality trait disorder, and generalized anxiety disorder). (Tr. 349-50.)

The ALJ gave five reasons to discount Dr. Mendez's opinion. (Tr. 19.) The ALJ's first reason was that the opinion "is inconsistent with the objective medical evidence" because Plaintiff's "mental status examinations are routinely within normal limits." (*Id.*) Most of the ALJ's record citations, however, simply show that Plaintiff was alert, oriented, cognitively intact, and acting appropriately during treatment visits for his physical ailments. (Tr. 294, 296, 297, 300, 311, 320, 354, 401, 412, 424, 448.) The rest of the citations either do not address Plaintiff's mental status (Tr. 305, 434) or show that he was "stuporous" from his medication (Tr. 367, 379, 390). Although these mental status reports suggest Plaintiff was capable of acting appropriately at particular moments in time, they do not speak to Plaintiff's ability to consistently appear for work, stay on task, and perform appropriately. Accordingly, this is an insufficient justification to disregard Dr. Mendez's opinion. *See Wenell v. Berryhill*, No. 4:18-CV-00098-NKL, 2018 WL

4219427, at *2 (W.D. Mo. Sept. 5, 2018) (ALJ must sufficiently identify inconsistencies in the record).

The ALJ's second reason for disregarding Dr. Mendez's opinion was that she "sees the claimant only infrequently as the record shows only ten appointments over the past two years." (Tr. 19.) However, the ALJ did not explain how often a patient with the mental impairments noted by Dr. Mendez would be expected to see a psychiatrist or how many visits would be needed for Dr. Mendez to form a persuasive opinion. The ALJ's logic also does not square with his decision to give greater weight to a non-examining physician's opinion (Raphael Smith, Psy.D.).

The ALJ's third reason for disregarding Dr. Mendez's opinion was that it is inconsistent with Plaintiff's activities of daily living. The ALJ stated that Plaintiff "attends church every Sunday, drives independently, shops, pays bills, and cares for his children." (Tr. 19.) According to the ALJ, these activities "would not be possible if Dr. Mendez's opinion were valid." (*Id.*) However, the ALJ did not explain why these activities would not be possible with the level of impairment Dr. Mendez noted. None of these activities of daily living suggest Plaintiff could stay on task more than 75% of the time at work or miss fewer than four days per month. (Tr. 349 (Dr. Mendez's opinion).) Nor do they suggest Plaintiff could perform work activities within a schedule, work around others without being excessively distracted by them, or take only a reasonable number of breaks. (Tr. 350 (noting extreme limitations in these areas)). After reviewing Plaintiff's reports and the transcript of his testimony about his daily activities, the Court is not convinced that they conflict with Dr. Mendez's opinion. *See Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (daily activities did not conflict with the need for rest periods described by the plaintiff's treating physicians); *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001) ("it is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased") (quotation marks and citation omitted); *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) ("[O]ne characteristic of mental illness is the presence of occasional symptom-free periods. Although the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim.") (quotation marks and citation omitted).

The ALJ's fourth reason for disregarding Dr. Mendez's opinion was that it is "inconsistent with Dr. Smith . . . whose opinion is given greater weight." (Tr. 18.) The ALJ also stated as follows in finding Dr. Smith's opinion partially persuasive: "Dr. Smith has a thorough understanding of the disability program and the evidentiary requirements and is familiar with the other information in a claimant's case record. Additionally, his opinions are supported by objective clinical findings and medical treatment notes through the date of his review." (Tr. 15.) This does not explain why Dr. Smith's opinion deserves greater weight than Dr. Mendez's opinion, which was provided approximately a year-and-a-half after Dr. Smith's opinion. (Tr. 117, 350.) Without further explanation, the Court cannot say this is a sufficient justification to disregard Dr. Mendez's opinion. *See Papesh v. Colvin*, 786 F.3d 1126, 1133 (8th Cir. 2015) ("because nonexamining sources have no examining or treating relationship . . . the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions") (quoting 20 C.F.R. § 404.1527(c)(3)).

The ALJ's fifth reason for disregarding Dr. Mendez's opinion was as follows: "Finally, when the claimant stopped taking some of the medications she prescribed, his mental condition actually improved." (Tr. 19.) This is not supported by the medical evidence cited by the ALJ, which is a note by Diane Cornelison, D.O. from a treatment visit for a Botox injection in Plaintiff's neck. Dr. Cornelison had recommended discontinuing certain antipsychotics because they were exacerbating his neck condition, which was "affecting his life more than the OCD." (Tr. 380.) Dr. Cornelison and Dr. Mendez then collaborated to wean him off some of the antipsychotics. (Tr. 352.) In the note cited by the ALJ, Dr. Cornelison stated, "[o]verall he is greatly improved he [sic] is the most clear and able to converse that we have seen him." (*Id.*) This note does not support the ALJ's broader assertion that Plaintiff's mental conditions actually improved—i.e., his major depression with antipsychotic features, obsessive compulsive personality trait disorder, and generalized anxiety disorder. (Tr. 19.) *See Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (ALJs should not "make their own independent medical findings") (citation and quotation marks omitted). Accordingly, this is an insufficient justification to disregard Dr. Mendez's opinion.

Finally, the ALJ did not discuss whether Dr. Mendez's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Goff*, 421 F.3d at 790 (cleaned up). The Court further observes that the record does not contain the consultative examination report that was ordered by a different ALJ in a prior proceeding due to the illegibility

5

of Dr. Mendez's notes. (Tr. 81-82, 102, 329-47.) On remand, if the ALJ is unable to read Dr. Mendez's notes, the ALJ should attempt to obtain a legible transcript or otherwise develop the record as needed to render a complete assessment of Dr. Mendez's opinion. *See Weatherly v. Colvin*, No. 12-516-CV-W-DPR-SSA, 2013 WL 3807624, at *1 (W.D. Mo. July 22, 2013) ("The agency . . . is tasked with developing a claimant's complete medical history . . . .").

## II. Subjective Complaints

When evaluating a plaintiff's subjective complaints, an ALJ "must give full consideration to all of the evidence presented relating to subjective complaints . . . [including]: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* SSR 16-3p, 2016 WL 1020935 (March 16, 2016). "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as he acknowledges and examines those considerations before discounting the [plaintiff's] subjective complaints." *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (cleaned up). The ALJ may discredit subjective complaints if they are "inconsistent with the evidence on the record as a whole" but must "make an express credibility determination detailing his reasons for discrediting the testimony." *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). In reviewing the ALJ's decision, this Court "will not substitute its opinion for the ALJ's, who is in the better position to gauge credibility and resolve conflicts in the evidence." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Here, the ALJ disregarded Dr. Mendez's opinion in assessing Plaintiff's subjective complaints about his mental impairments. (Tr. 18-19.) As a result, the ALJ should reassess Plaintiff's complaints about his mental impairments after reassessing Dr. Mendez's opinion. The Court further notes that daily activities should not be considered in isolation; "consideration should be given to the quality of daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the frequency, appropriateness, and independence of the activities." *Leckenby*, 487 F.3d at 634 (cleaned up); *see also Hutsell*, 259 F.3d at 713 (mental disability does not necessarily cease during symptom-free periods); *Andler*, 100 F.3d at 1393 (same, unlike some physical ailments).

Regarding Plaintiff's subjective complaints about his physical condition (a neck injury), the record contains conflicting evidence better left to the judgment of the ALJ. Plaintiff had a cervical fusion surgery and an attempted corrective surgery. He claims that, as a result of this, he cannot lift, drive, reach, walk straight, or turn his head. (Tr. 231.) However, he testified that he is able to drive short distances, and his medical records show that his physical condition improved by 60% with Botox injections for up to 10 weeks at a time. (Tr. 47-48, 422.) *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) ("[I]f an impairment can be controlled through treatment or medication, it cannot be considered disabling."). The record also contains a medical opinion from Dr. Smith to support the RFC for Plaintiff's physical abilities and evidence that he is fully independent in self-care and able to do chores, take care of his children, walk several times a week, occasionally play the drums, and regularly attend church. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (inconsistencies between subjective complaints and evidence of daily activities may raise credibility concerns). Accordingly, the ALJ's assessment of Plaintiff's subjective physical complaints is supported by substantial evidence.

### III. Medical Evidence to Support the RFC

Finally, Plaintiff suggests there is no medical evidence in the record capable of supporting the RFC. Although the RFC should be reanalyzed on remand, Plaintiff's argument lacks merit. In general, the opinion of a non-examining physician such as Dr. Smith can support an RFC. *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

### Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court **REVERSES** the decision of the ALJ under sentence four of 42 U.S.C. § 405(g). This case is **REMANDED** to the ALJ for reassessment of Dr. Mendez's opinion, further record development as the ALJ deems necessary, and reconsideration of the RFC.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 3, 2020